# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                              CRIMINAL ACTION NO. 3:18-00240

SCOTT EDWARD RIGGS

## MEMORANDUM OPINION AND ORDER

Defendant Scott Edward Riggs was ordered detained pending trial by Magistrate Judge Cheryl A. Eifert, pursuant to 18 U.S.C. §3142(e), on December 13, 2018. *Det. Order*, ECF No. 23. Defendant now moves the Court to revoke the detention order and release him on bond. *Mot. Revoke Det. Order*, ECF No. 27. For the foregoing reasons, the Court **DENIES** Defendant's motion to revoke the detention order, and **ORDERS** the defendant remain detained under the existing detention order.

## I. BACKGROUND

In April 2018, Special Agent Michael Fleener of the Department of Homeland Security received an investigative referral from an Australian police department about a foreign website being operated by an individual believed to be residing in West Virginia. *Transcript I*, p. 9, ECF No. 27-1. The website contained several folders of sexually explicit images of women in folders labelled "Wife and I", "Sister-in-law", "Spy on my sister", "Spy on my daughter's friend preview", and "Spy on my daughter's friend full". *Id.* at 9. A total of twenty-six image files were contained within the two "Spy on my daughter's friend" folders. *Id.* at 11. These images appeared to be of a naked teenage girl, approximately twelve to fifteen years' old, getting in and out of a shower. *Id.* These images included pictures where the minor's vagina was visible. *Id.* The images were

believed to have been uploaded to the website in January 2018. *Id.* During his investigation, Agent Fleener identified the defendant as the suspected source of the images. *Id.* at 12.

On September 19, 2018, Agent Fleener interviewed the defendant at his home in Huntington. *Id.* Agent Fleener showed the defendant several of the images contained in the folders on the website, and the defendant acknowledged that some of the sexually explicit images were of he and his wife, posted without his wife's knowledge. *Id.* at 13. The defendant further admitted to posting the twenty-six images files of the minor, which he captured with a phone hidden underneath a cabinet in the bathroom. *Id.* at 14. Agent Fleener verified the identity of the minor in those images and determined she was thirteen years old at the time the video was made. *Id.* at 16.

On October 23, 2018, a federal grand jury returned a two-count indictment against the defendant, charging him with the production of child pornography and distribution of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252A(a)(2). *Indictment*, ECF No. 1. On October 30, 2018, the defendant was taken into custody pursuant to an arrest warrant. *Initial Appearance*, ECF No. 9. On November 2, 2018, the defendant had his initial appearance before Magistrate Judge Eifert. *Id.* Magistrate Judge Eifert continued the detention hearing until a home inspection could be conducted. *Transcript I*, at 45.

On November 16, 2018, the U.S. Probation Office completed an inspection of the defendant's home in Huntington and filed a report on November 27, 2018. *Home Rep.*, p. 1, ECF No. 27-2. While the Probation Office found the residence suitable for electronic monitoring, it recommended detention based on community safety concerns. *Id.* at 2.

On December 6, 2018, Magistrate Judge Eifert reconvened the detention hearing. *Transcript II*, ECF No. 27-3. On December 13, 2018. Magistrate Judge Eifert issued an order detaining the defendant pending trial, finding by clear and convincing evidence that no conditions

of release would assure the safety of the community. *Det. Order*, at 2. Subsequently, the defendant moved this Court to revoke the detention order and release the defendant on bond. *Mot. Revoke Det. Order*.

## II. LEGAL STANDARD

"When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Covington*, No. 2:14-CR-00006, 2014 WL 504880, at *3–4 (S.D.W. Va. Feb. 7, 2014) (*citing United States v. Stewart,* 19 F. App'x 46, 48 (4th Cir. 2001) (per curium) (unpublished) (internal citations omitted); *cf. United States v. Shrader,* 1:09–cr–00270, 2010 WL 503092 *1 (S.D.W.Va. Feb.8, 2010) (observing a district court need not hold a second detention hearing when reviewing a motion under 18 U.S.C. § 3145(b)).

If, after a detention hearing, a court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court must detain the defendant before trial. 18 U.S.C. § 3142(e)(1). "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Stewart,* 19 F. App'x at 48 (citations omitted).

Additionally, there exists a rebuttable presumption that no such condition or combination of conditions exist if there is probable cause the defendant committed an offense involving a minor victim under sections 2251A and 2252A(a)(2). 18 U.S.C.A. § 3142(e)(3). "A defendant must produce only 'some evidence' to rebut this presumption." *United States v. Putillion*, No. 2:18-CR-00186, 2018 WL 5784066, at *3 (S.D.W. Va. Nov. 5, 2018) (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)). However, this presumption does not disappear once rebutted. The rebutted presumption has evidentiary weight and "is incorporated into the § 3142(g) factors

considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial." *Id.* at 384. "[T]he presumption requires the court to draw an inference of dangerousness when probable cause is established that defendant committed a predicate offense, an inference whose strength depends on all the evidence before the Court." *Id.*

In determining a defendant's suitability for bond, a court must take into account the following factors: (1) the nature and circumstances of the offense charged, including whether the offense involves a minor victim or a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including their character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### III. DISCUSSION

In his motion, the defendant relies on the record present before Magistrate Judge Eifert. *Mot. Revoke Det. Order*, at 10. The defendant presents evidence along with the motion to rebut the testimony and finding that he posted the age of the victim on the public website where the videos were available. *Transcript I*, at 12; *Det. Order*, at 8. This evidence shows a post where the username associated with the defendant ("nekkidmanwv") responded to an inquiry about the age of the victim with the comment "see full album.", and another user commented "13". *Comment Section*, ECF No. 27-4. This photo was disclosed to the defendant during initial discovery and does not constitute newly exculpatory evidence. *Mot. Revoke Det. Order*, at 13. Furthermore, this was

presented to counter the notion that the defendant had broadcasted the victims age, and not that he did not know her age at the time. *Id.* Given that no substantively new evidence has been presented and neither party has requested a hearing, the Court finds a a *de novo* review of the record to be appropriate. The Court will address each statutory factor in turn.

*A. Rebuttable Presumption of Detention*

To rebut the presumption of detention, the defendant offered two witnesses.[1] First, Mr. Joseph Wayman testified on behalf of the defendant. *Transcript I*, at 18. He stated he was neighbors with the defendant from 2012 until 2015, where they had a social relationship fostered through church, dinners, and regular conversation. *Id.* at 19. Mr. Wayman stated he did not think the defendant would be a danger to the community if released on bond. *Id.* at 20.

The second character witness was the defendant's wife, Jamie Riggs. *Id.* at 22. Ms. Riggs stated she would be willing to serve as a custodian for the defendant if released on bond and regulate internet usage to prevent his access. *Id.* at 25–26. Ms. Riggs also does not believe her husband would be a danger to the community. *Id.* at 27.

Given this testimony, the Court finds the defendant has satisfied the light burden of proof required to rebut the statutory presumption of detention. However, this remains an evidentiary factor in favor of detention.

*B. Nature and Circumstance of the Offense*

Here, there are three elements which identify the offense charged as a particularly heinous crime. First, the facts involve a minor victim. 18 U.S.C. § 3142(g)(1). Second, they are classified as crimes of violence. *Id.*; 18 U.S.C. § 3156(a)(4)(C). Third, these statutes include mandatory

---

[1] For reasons discussed below, the concern at issue is not the assurance of the defendant's appearance, but a lack of reasonable assurance of the safety of others or the community.

minimum sentences of fifteen and five years, which indicate the serious nature of the alleged crime. 18 U.S.C. §§ 2251(a) and 2252A(a)(2); *see also United States v. Blankenship*, No. CRIM. 1:08-0073, 2008 WL 1925137, at *4 (S.D.W. Va. Apr. 29, 2008). It is clear to the Court that the nature of the alleged offense weighs in favor of detention.

### C. Weight of the Evidence

Here, the case against the defendant is a strong one. During the course of the investigation, law enforcement officers were able to identify the defendant by his IP address, received admissions that he produced and posted the illegal child pornography, identified the victim as a thirteen-year-old friend of the defendant's daughter, and established the defendant's home was the location where the video was filmed. *Id.* at 9, 12–15. This evidence also clearly weighs in favor of detention. *See Blankenship*, 2008 WL 1925137 at *5 (weighing admissions of guilt as "strong.").

### D. History and Characteristics of the Defendant

The Court is sufficiently satisfied the defendant is not a flight risk. The record reflects he has longstanding ties to the community, a limited criminal history, and has maintained steady employment throughout his life. *Pre-trial Report*, pp. 1–2, 4.

By way of counsel, the defendant argues the crime alleged is an isolated incident, there is no evidence of a habit of collecting or producing child pornography, and "[t]here exists no allegations the defendant has ever engaged in any inappropriate behavior, such as sexually explicit chats, with any minor over the Internet (*sic*) or in person." *Mot. Revoke Det. Order*, at 11–12. The Court takes issue with this claim, as it improperly frames a serious allegation of the defendant's character, which appears to include a systematic abuse of positions of trust as a defining trait.

Make no mistake, an allegation of filming the friend of one's daughter in the shower is an instance of "inappropriate behavior." While this may be the first recorded incident of the defendant

filming a minor, the Government has submitted evidence that he admitted to unilaterally posting sexually explicit photos of he and his wife, as well as lascivious photos of his sister and sister-in-law, unbeknownst to those filmed or pictured. *Transcript I*, at 13. When it came to the minor victim, the evidence suggests he surreptitiously positioned the camera to catch thirteen-year-old visitor in an act of innocent vulnerability. These images were not kept as a private vice, but broadcasted to an international audience, irretrievable from stream of internet traffic. As alleged, the defendant has a pattern of violating boundaries for spaces believed to be safe. While there are many factors which demonstrate the defendant is grounded in the community, his abuse of trust displays a character that weighs in favor of detention.

*E. Nature and Seriousness of the Danger to Any Person or the Community*

In regard to the final statutory factor, the defendant contests the Government "has never identified any specific person who would be at risk of harm should the defendant were (*sic*) released." *Mot. Revoke Det. Order*, at 11. The Court firmly disagrees with this assessment. It was stated that Ms. Riggs said the victim would not be permitted to come to the home while the defendant was housed there. *Transcript II*, at 6. However, the probation report states Ms. Riggs reported that the victim and her daughter have remained friends, and the victim has asked to return to the residence. *Report*, at 1. As any parent can attest, children are not always adherent to the boundaries established for their benefit. Ms. Riggs works full-time, which leaves a potential of forty-plus hours a week where she will be absent. *Transcript I*, at 30. Idle hands are the Devil's workshop, and this window of opportunity to prey on a victim who wants to return to the scene of the alleged crime creates a serious danger.[2]

---

[2] Though there appear to be no allegations the defendant regularly trafficked in child pornography, the lack of supervision creates concern about the security of internet capable devices being circumvented for further illicit use.

Furthermore, claims by Ms. Riggs that she feels "comfortable" with any child coming into her home, and that her children are safe, ring hollow in the ears of the Court. *Transcript I*, at 29. The allegations and admissions by the defendant paint a picture of a man who is comfortable with the sexual commodification of his closest family members and a vulnerable minor. It appears to the Court that Ms. Riggs would be a less-than-ideal steward of the defendant, as his teenage step-daughters would be permitted unregulated access to the proposed detention residence. *Id.*

While the defendant attempts to downplay the allegations of his exploitation of a minor victim, his character as described, coupled with a semi-absent gatekeeper with no qualms about allowing access to reasonably foreseeable victims in the future, highlights a danger to the community. This factor, as with all the others, weighs in favor of the defendant's detention. Overall, the Court finds by clear and convincing evidence that no condition or combination of conditions of the defendant's release would assure the safety of the community.

### IV. CONCLUSION

For these reasons, the Court **DENIES** Defendant's motion to revoke the detention order, (ECF No. 27), and **ORDERS** the defendant remain detained under the existing detention order.

The Clerk is directed to provide a copy of this Order to defendant, counsel of record, the United States Marshals Service, and the Probation Department.

ENTER: January 31, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE